29905. HICKMAN *v.* THE STATE.

DECIDED JANUARY 12, 1943.

*J. Wightman Bowden, John R. Strother,* for plaintiff in error. *Bond Almand,* solicitor, *John A. Boykin, solicitor-general, Durwood T. Pye, Lindley W. Camp,* solicitor, contra.

GARDNER, J. The defendant was convicted of operating a lottery known as the "number game." The certiorari was overruled and she excepted. The manner of operation of this game was agreed to by counsel. It was further agreed that at the time of the arrest the game was being operated in Atlanta, Fulton County, Georgia. We think by this time the game and the manner of its operation are thoroughly familiar to all who may be concerned in this decision, and we will not further elaborate on it. The defendant introduced no testimony, but made a statement. The State's evidence consists of that of the police officer. In substance he testified: That on or about April 7, 1942, he and another police officer went to 833 McDaniel Street; that Flossie Hickman,

the defendant, refused admission to the officers; that entry was forced, and as the door was forced open defendant raised up from the kitchen cabinet and inside the cabinet were fourteen plain lottery books, unused, and a batch of yellow tickets written up for the day, books that contained a lot of memoranda of that day's business; that the defendant said it was all hers; that defendant's crippled husband and her very old mother were there, but defendant stated that they didn't have anything to do with writing the lottery; that "We told them we were going to lock them all up;" and that defendant stated to the officer that she had written all those tickets.

The defendant's statement was substantially as follows: that she was a housekeeper and knew nothing of the crime; that her grandmother was about a hundred years old and had almost lost her mind, and that was the reason the door was locked; that two nephews had been put out of the house; that she was washing clothes, and just as she went to open the drawer to get the washing powder to put in the clothes the detective broke the door in, and it was at that time that "I looked down in this drawer there and all these books and things were there. I don't know where they came from and it got me excited, and by that time my husband came in." That her husband was a retired railroad fireman and that her grandmother was old, and that she begged the detective to take her down instead of the husband or grandmother, admitting full responsibility; that the boys, ten and eleven years old, probably brought the lottery books in to play with, and that defendant knew nothing about the books being in the house. She denied all responsibility in the premises.

The defendant contends that the confession was without probative value for the reason that it affirmatively appears it was not freely and voluntarily made. The judge passed on the case in the capacity of judge and jury. No objection was made to the introduction of the alleged confession. It therefore became a question of fact for the judge to determine whether, under all of the facts, the confession had been freely and voluntarily made. The officer testified that after he went to the front door and the defendant observed him through a curtain she would not let him in. He forced himself into the building by breaking the lock. As he entered he saw the defendant near a meal bin which contained lot-

tery paraphernalia, including a number of books, written tickets, etc. Also, he observed tickets on the table. After this the husband entered the house. Defendant's mother was there. The officer said, "We told them we were going to lock them up." It does not appear from the record whether this statement was made before or after the defendant confessed that she had written the tickets herself. It is true that, nothing else appearing, the husband, who was the head of the house, was presumed to be the owner of the lottery paraphernalia. But we think the evidence shows that the defendant busied herself to such an extent with the paraphernalia that the court could very well infer that she was connected with the transaction as a principal, this being a misdemeanor. This is particularly true when we take into consideration the statement of the defendant, which the judge had a right to consider along with the evidence. We think the evidence in this case aliunde the confession sustained the conviction.

We do not think there is any merit in the contention that the confession was without probative value because it was not freely and voluntarily made. "O. M. Bounds testified that he went to defendant's house, . . that defendant still maintained he had not taken any cotton; that sometime afterwards defendant asked witness what he was going to do with him, and witness replied that he was going to carry him to jail—that he knew he had gotten away with some of his cotton; that defendant then confessed that he had gotten a basket of cotton; that witness then carried him to jail; and that the confession was freely and voluntarily made. Under these facts, the question as to whether the confession was freely and voluntarily made was for the jury." *Mills* v. *State*, 38 *Ga. App.* 125 (143 S. E. 575).

We do not think the mere statement of the officer that he was going to "lock them all up" would ipso facto render the confession illegal as a matter of law. It was for the judge to determine as a matter of fact whether, under all of the facts and circumstances, the confession had been freely and voluntarily made. The judge did not err in overruling the certiorari.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*